## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **BRIAN LEON HAMLET,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:20-cv-00013** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **DAVE A. IRVIN, et al.,** | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Brian Hamlet, a Virginia inmate appearing pro se and proceeding in forma pauperis, ECF Nos. 8, 20, has filed suit under 42 U.S.C. § 1983 alleging that Defendants Dave Irvin, Vanessa Duncan, and Travis Cassell violated Hamlet's constitutional rights by requiring him to wear a global positioning system ("GPS") ankle bracelet as a condition of his state court supervised probation. See generally Compl. 1–24, ECF No. 1. Hamlet seeks $12 million in damages against each Defendant in his or her individual capacity. Id. at 4, 23–24. The matter is before the court on Defendants' motion for summary judgment on the merits, ECF No. 23, which has been fully briefed, ECF Nos. 24, 28.

Having considered the nature of Hamlet's § 1983 claims, however, the court concludes that they are barred by Heck v. Humphrey, 512 U.S. 477 (1994), and, in any event, his complaint fails to state a claim for which relief can be granted. Accordingly, the action will be dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1) (requiring courts to summarily dismiss actions brought by certain plaintiffs if the court determines that the complaint fails to state a claim upon which relief can be granted), and Defendants' motion for

summary judgment will be denied as moot.[1]

## I.   BACKGROUND

### A.   Factual Background[2]

In February 2014, Hamlet was convicted in the Circuit Court of Montgomery County, Virginia, on one count of malicious wounding. Compl. Ex. A, ECF No. 1-1 at 1–4 (sentencing order, Commonwealth v. Hamlet, No. CR13001481-00 (Montgomery Cir. Ct. filed May 20, 2014)).[3] That May, the presiding judge sentenced Hamlet to a term of imprisonment for fifteen years, with ten years suspended "upon the condition(s) specified in [the] Suspended Sentence Conditions" section of the order. Id. at 2. The judge marked off two such conditions:

---

[1] Not all federal courts treat a complaint dismissed pursuant to Heck as a dismissal "for failure to state a claim." Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1724 n.2 (2020). The Fourth Circuit does not appear to have spoken on the issue of whether such a dismissal is for failure to state a claim, but it has noted in an unpublished decision that a dismissal pursuant to Heck should be "without prejudice to the [plaintiff's] ability to refile his claims" if his underlying conviction or sentence "is overturned or called into question by the appropriate court." Omar v. Chasanow, 318 F. App'x 188, 189 (4th Cir. 2009) (per curiam). This practice is consistent with Heck's holding that a § 1983 claim for "damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated," 512 U.S. at 489–90. See, e.g., Ballenger v. Owens, 352 F.3d 842, 846–47 (4th Cir. 2003) (explaining that Heck "denied the very existence of . . . a cause of action" under § 1983 when a judgment in plaintiff's favor would necessarily imply the invalidity of his conviction or sentence and concluding that "the district court appropriately dismissed [plaintiff's] § 1983 suit without prejudice" under 28 U.S.C. § 1915A).

[2] Unless otherwise noted, the information in this section comes from Hamlet's complaint, ECF No. 1, and the state court sentencing order attached as Exhibit A thereto, ECF No. 1-1. See Fed. R. Civ. P. 10(c). The court has also taken judicial notice of information on the publicly available docket in Hamlet's underlying criminal case. See Ragland v. Doe, 811 F. App'x 177, 177 (4th Cir. 2020) (per curiam) (taking judicial notice of prisoner's "North Carolina Offender Record" in determining that his § 1983 claims were not barred by Heck because it did "not appear that he was ever convicted of any charges" related to his § 1983 claims, but affirming district court's order dismissing the "complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)"); Songer v. Overton, No. 7:18cv491, 2018 WL 6242372, at *1–2 (W.D. Va. Nov. 29, 2018) (considering prisoner's "allegations and state court records online" in summarily dismissing complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i)); Switzer v. Robertson, No. 5:11cv86, 2011 WL 3846852, at *3 (W.D. Va. Aug. 29, 2011) (noting that a district court screening a complaint under 28 U.S.C. § 1915(e)(2) may take judicial notice of public documents, including state court records, even when the documents are neither referenced in nor integral to the complaint) (citing Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

[3] Malicious wounding is a Class 3 felony, Va. Code § 18.2-51, punishable by "a term of imprisonment of not less than five years nor more than 20 years," id. § 18.2-10(c).

> **Good Behavior:** The defendant shall be of good behavior for 10 years . . . from the defendant's release from confinement.
>
> **Supervised Probation:** The defendant is placed on probation under the supervision of a Probation Officer to commence . . . upon release from incarceration for 5 years[.] The defendant shall comply with all the rules and requirements set by the Probation Officer. Probation shall include substance abuse counseling and/or testing as prescribed by the Probation Officer.

Id. at 3; see generally Burnham v. Commonwealth, 833 S.E.2d 872, 873–74 (Va. 2019) (discussing a sentencing order containing similarly worded suspended sentence conditions, including that "'[t]he defendant shall comply with all the rules and requirements set by the Probation Officer'" while on supervised probation, and explaining that a suspended sentence "is a 'free gift' intended to spur the defendant into turning his life around" or risk serving his entire sentence in prison). The judge did not put any "Special conditions" on the suspension of sentence. Compl. Ex. A, at 3; see also Compl. 5–6, 9, 16–18, 20–21.

Hamlet was released from prison on January 4, 2018. See Compl. 5. That day, he was taken to the "District 28 Probation Dept." in Radford, where he met with Probation Officers Vanessa Duncan and Travis Cassell. Id. at 1, 9; see generally id. at 8–12. While Duncan and Hamlet were "going over [the] conditions of [Hamlet's] probation," she told him that "she was placing [him] on GPS monitoring special conditions." Id. at 9. Hamlet objected that the sentencing judge had not ordered GPS monitoring and asked Duncan who authorized it. Id. Duncan responded that she, Cassell, and Chief Probation Officer Dave Irvin discussed the issue and "felt that [Hamlet] need[ed] to be placed on GPS monitoring." Id. at 10. Hamlet asked to speak to his attorney and said he had the right to a court hearing before he could be required to submit to GPS monitoring. Id. Duncan allegedly instructed Hamlet to sign a "Waiver of Hearing paper," id., and a "GPS Monitoring Condition" form, id. at 15. Both

Duncan and Cassell allegedly threatened to "lock [Hamlet] back up" if he did not at least sign the forms' "refused to sign" sections. Id. at 8; see id. at 10–11, 15. Hamlet signed the forms as directed. See id. at 11, 21. At that point, Duncan and Cassell secured the GPS bracelet around Hamlet's left ankle. See id. at 5, 11. Cassell also programed the "GPS pager" to go off if Hamlet violated his "10 pm curfew." See id. at 14 ("I worked late one night and the GPS pager went off while I was at work. . . . I had to pull the device out in front of my coworkers [and] that was embarrassing.").

Hamlet wore the GPS ankle bracelet until late August 2018. Id. at 6. He often spoke to all three Defendants, either on the phone or in person, during those eight months and repeatedly asked them to take him off GPS monitoring. See, e.g., id. at 11–17. They refused each time, and allegedly told Hamlet that he would wear the ankle bracelet for his entire five-year term of supervised probation. See id. at 12, 14–15, 17. Around August 24, 2018, Hamlet was arrested on a probation violation "for pushing a small hole in the wall of [the] motel room," id. at 6–7, where he had been staying at the probation department's expense, see id. at 9, 16. The GPS bracelet was removed upon his arrest. Id. at 6. In January 2019, the judge revoked Hamlet's suspended term of imprisonment, sentenced him to time served, and placed him on probation for five years from the date of his release from jail. See docket entry of Jan. 8, 2019, Hamlet, No. CR13001481-01 (Montgomery Cir. Ct. filed Sept. 10, 2018) (noting "[s]entence [t]ime" of 10 years' incarceration, with 9 years, 7 months, 14 days suspended, for a violation occurring on September 10, 2018).

## B.   Hamlet's Claims

Hamlet filed this § 1983 lawsuit in January 2020, while detained at Western Virginia

Regional Jail. Compl. 1.[4] Although Hamlet does not plead his claims in separate counts, see Fed. R. Civ. P. 10(b), it is sufficiently clear that he believes the Defendants conspired to violate, and did violate, five federal constitutional protections by requiring Hamlet to wear the GPS monitor as a "special condition" of his probation without first obtaining a court order specifically imposing that condition in accordance with Virginia law. See generally id. at 3–9, 13, 18–24; accord Defs.' Br. in Supp. of Mot. for Summ. J. 9–10 ("The crux of all of Hamlet's claims rest[s] with his assertion that '[u]nder Virginia statute only the trial court has the authority to impose GPS special conditions as a condition of probation' and '[i]t is not within the authority of the probation officers to impose such GPS special conditions as conditions of probation.'" (quoting Compl. 6)), ECF No. 24. Hamlet alleges that Defendants' conduct violated (1) his First Amendment right to travel freely, see Compl. 8, 19; (2) his Fourth Amendment right against unreasonable searches and seizures, see id. at 3–5, 18–23; (3) his Fifth Amendment right against "double sentencing," id. at 20, or "enhance[d] or extend[ed]" conditions of probation, id. at 21; (4) the Eighth Amendment's protection against cruel and unusual punishments, id. at 8, 19–23; and (5) his Fourteenth Amendment right not to be deprived of a protected "liberty interest [without] notice and a hearing on the matter," id. at 3; see also id. at 4–6, 17–19. He also invokes the "unconstitutional conditions doctrine," id. at 8, in describing Duncan and Cassell's alleged threats to send him back to jail if he did not sign the "Waiver of Hearing" and "GPS Monitoring Conditions" forms, see id. at 8, 10–11, 15, 21.

---

[4] It appears Hamlet was serving a reinstated portion of his suspended sentence after violating the conditions of his probation for a second time. See docket entry of Aug. 19, 2019, Hamlet, No. CR13001481-02 (Montgomery Cir. Ct. filed June 26, 2019) (reflecting that Hamlet's "sentence/probation" was revoked for a violation occurring on June 26, 2019, and he was sentenced to a term of incarceration for 9 years, 7 months, with 8 years, 1 month suspended, followed by five years' supervised probation upon release).

Hamlet seeks $6 million in compensatory damages and $6 million in punitive damages against each Defendant in his or her individual capacity. Id. at 4, 23–24.

Hamlet was released from jail in October 2020, see ECF No. 17, but he was arrested in June 2021 for allegedly violating the terms of his probation, see docket entry of Aug. 16, 2021, Hamlet, No. CR13001481-03 (Montgomery Cir. Ct. filed June 21, 2021) (noting revocation proceedings continued until September 2021). The last ECF filing in this case indicates that Hamlet was incarcerated at the Western Virginia Regional Jail as of July 8, 2021. ECF No. 29.

## C.    Sua Sponte Consideration of Heck Bar

Defendants moved for summary judgment on the merits of Hamlet's § 1983 claims. See generally Defs.' Br. in Supp. of Mot. for Summ. J. 9–18. Although Hamlet mentioned Heck v. Humphrey in his complaint, Compl. 4 ("None of my claims are barred by Heck because none of my claims change or challenge the invalidity of my original conviction of malicious wounding I was sentenced to on May 21st 2014 case # CR13001481-02."), Defendants did not argue that Hamlet's claims were arguably "an attack on the sentence imposed by the Circuit Court," Saunders v. Jones, No. 3:12cv192, 2014 WL 2155342, at *3 (E.D. Va. May 22, 2014), which suspended part of Hamlet's fifteen-year prison term "upon the condition[]," Compl. Ex. A, at 2, that he "comply with all the rules and requirements set by the Probation Officer" while on supervised probation, id. at 3. See Saunders, 2014 WL 2155342, at *3. Consistent with its screening obligations under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b), however, the court finds it appropriate to address the potential Heck bar sua sponte. Cf. Holcomb v. Kindley, Civ. Act. No. 1:16-372, 2016 WL 7669499, at *3 n.3 (D.S.C.

6

Dec. 22, 2016) (noting that "[t]he Heck doctrine, which addresses when a [prisoner's § 1983] claim has accrued, closely resembles a jurisdictional barrier as the court does not have subject matter jurisdiction over a claim that has not accrued," and considering the issue sua sponte after defendants moved to dismiss under Rule 12(b)(6)), adopted by 2017 WL 86132 (D.S.C. Jan. 10, 2017); Hicks v. Canterbury, No. 2:13cv27830, 2015 WL 6509133, at *4 (S.D. W. Va. Oct. 28, 2015) ("Although the limitation on § 1983 actions announced in Heck is not jurisdictional, a district court is entitled to sua sponte dismiss a case that is barred by Heck. When a § 1983 action is barred by Heck, the legal effect is that the action is not cognizable, and thus fails to state a claim." (internal citations omitted)).

## II.    DISCUSSION

### A.    Hamlet's Claims are Barred by Heck.

#### 1.    Heck v. Humphrey

Hamlet seeks damages from the Defendant probation officers for requiring him to wear a GPS monitor, without first obtaining a separate order from the sentencing judge, while he was on court ordered probation in 2018. As explained below, the court concludes that Heck bars Hamlet's § 1983 claims because (1) he was "in custody" on the sentence imposed by the Montgomery Circuit Court for his 2014 malicious wounding conviction when he filed this lawsuit, and he is currently in custody pending a hearing to revoke suspension and probation; (2) a judgment in Hamlet's favor would necessarily imply the invalidity of at least part of this sentence, namely the order's general conditions of suspension and supervised probation; and (3) Hamlet has not shown that his sentence was ever "overturned or called into question by the appropriate court," Omar, 318 F. App'x at 189 (citing Heck, 512 U.S. at 486–87). See

generally <u>Bishop v. Cnty. of Macon</u>, 484 F. App'x 753, 754–55 (4th Cir. 2012) (per curiam); <u>Firewalker-Fields v. Albertson</u>, No. 7:19cv741, 2020 WL 2946071, at *1–2 (W.D. Va. June 3, 2020); <u>Saunders</u> 2014 WL 2155342, at *2–4.

      <u>Heck</u> addressed the intersection of the federal habeas corpus statute, 28 U.S.C. § 2254, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, two laws that provide state prisoners "a federal forum [to bring] claims of unconstitutional treatment at the hands of state officials." <u>Heck</u>, 512 U.S. at 480. The Supreme Court had long held that § 2254 provides the "exclusive" federal cause of action for any "state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release" from custody, "even though such a claim may come within the literal terms of § 1983." <u>Id.</u> at 481 (citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 488–90 (1973)). Conversely, a state prisoner challenging the conditions of his confinement, but not the fact or length of time that he is confined, should proceed under § 1983. <u>See</u> <u>Wilborn v. Mansukhani</u>, 795 F. App'x 157, 164 (4th Cir. 2019) (per curiam) (citing <u>Hill v. McDonough</u>, 547 U.S. 573, 579 (2006)). A state prisoner seeking damages for having to endure unconstitutional conditions of confinement must also proceed under § 1983, as damages are not available under § 2254. <u>Heck</u>, 512 U.S. at 481.

      To preserve important distinctions between these two causes of action, however, the Supreme Court in <u>Heck</u> held that a state prisoner cannot recover damages under § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he shows "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus" under § 2254.

Id. at 487 ("A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."). This principle extends to any § 1983 damages claim brought by a plaintiff "who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practically sought habeas relief while in custody." Covey v. Assessor of Ohio Cnty., 777 F.3d 186, 197 (4th Cir. 2015).

Hamlet filed this § 1983 suit in January 2020 while he was incarcerated, Compl. 1, apparently by reason of the state court reinstating Hamlet's suspended sentence after he violated conditions of supervised probation. See docket entry of Aug. 19, 2019, Hamlet, No. CR13001481-02 (Montgomery Cir. Ct. filed June 26, 2019). Thus, Hamlet was "in custody" for purposes of § 2254. Spencer v. Kemna, 523 U.S. 1, 6 (1998) ("Spencer was incarcerated by reason of the parole revocation at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires."). Even if Hamlet was not physically detained in January 2020, however, "he satisfied the custody requirement for habeas relief" because he was on supervised probation at that time. Bishop, 484 F. App'x at 755 (citing Jones v. Cunningham, 371 U.S. 236, 240–43 (1963)); see Firewalker-Fields, 2020 WL 2946071, at *2; Saunders 2014 WL 2155342, at *2. Indeed, he had been on supervised probation for the better part of two years by the time he filed this § 1983 action. Compl. 5. Hamlet does not allege that he could not have sought post-conviction relief in state court or that federal "habeas relief was unavailable during that time, practically or otherwise." Bishop, 484 F. App'x at 755 (noting that a § 1983 plaintiff who was serving a sentence of 36 months' probation when he filed suit, but whose sentence expired while the case was pending and therefore had no available remedy

under § 2254, could not "end-run <u>Heck</u> simply by sitting on his rights until all avenues for challenging" his conviction had closed).

Thus, the court must consider whether judgment in Hamlet's favor on any of his § 1983 claims "would necessarily imply the invalidity of his conviction or sentence" imposed by the state court. <u>Heck</u>, 512 U.S. at 487; <u>see</u> <u>Thigpen v. McDonnell</u>, 273 F. App'x 271, 273 (4th Cir. 2008) (per curiam) (indicating that the district court should apply <u>Heck</u> on a claim-by-claim basis and affirming dismissal without prejudice on <u>Heck</u> grounds as to inmate's double jeopardy claim, but not as to his equal protection, due process, or First Amendment claims). If it would, then those claims "must be dismissed" because Hamlet has not "demonstrate[d] that the conviction or sentence has already been invalidated." <u>Heck</u>, 512 U.S. at 487. If it would not, then those claims may at least be brought under § 1983. <u>See</u> <u>Covey</u>, 777 F.3d at 197–98; <u>Thigpen</u>, 273 F. App'x at 273 (dismissing non-<u>Heck</u> barred § 1983 claims without prejudice because inmate's conclusory allegations failed to state any plausible claim for relief). Hamlet's claims fall squarely into the first category. <u>See, e.g.</u>, <u>Firewalker-Fields</u>, 2020 WL 2946071, at *1–2 (explaining that Virginia inmate's allegation that defendant probation officers told him he could not use the internet or attend religious services while on probation "directly challenge[d] terms of the probation imposed as part of his criminal judgment" and, as such, "any relief granted on [his § 1983] claim would necessarily demonstrate the invalidity of at least a portion of the criminal judgment," namely "the challenged conditions of probation") (collecting cases); <u>Saunders</u>, 2014 WL 2155342, at *3 & n.3 (explaining that former Virginia inmate's § 1983 damages claims against probation officers, which challenged specific terms of probation including that plaintiff could not consume alcohol, have contact with children, or

use social media without approval from his probation officer, were "an attack on the sentence imposed by the Circuit Court and thus, necessarily implie[d] the invalidity of his sentence").

2.     Virginia's Treatment of Probation as a Condition of a Suspended Sentence

A brief overview of Virginia's relevant sentencing statutes is necessary to understand why <u>Heck</u> bars Hamlet's claims. First, when a convicted defendant is sentenced to a term of imprisonment, "the court may suspend . . . the sentence in whole or in part and in addition may place the defendant on probation under such condition the court shall determine," Va. Code § 19.2-303 (eff. July 1, 2011) (noting that permissible conditions "includ[e] monitoring by a GPS . . . tracking device, or similar device"). <u>See generally</u> <u>Collins v. Commonwealth</u>, 607 S.E.2d 719, 721 (Va. 2005) (explaining that "any sentence of confinement must first be suspended" before the defendant can be placed on probation as a condition of suspension).

Second, "while 'probation' is often used interchangeably with 'suspended sentence,' the terms refer to different sentencing matters." <u>Hunter v. Commonwealth</u>, 695 S.E.2d 567, 569 n.1 (Va. Ct. App. 2010) (citing <u>Grant v. Commonwealth</u>, 292 S.E.2d 348, 351 (Va. 1982) (noting that "the statutes distinguish between a suspension . . . of sentence, on the one hand," Va. Code § 19.2-303, "and probation, on the other hand," <u>id.</u> § 19.2-304, and rejecting defendant's argument "to treat the terms synonymously")). The "court may suspend the . . . execution of a sentence with or without probation, and impose probation with or without supervision." <u>Id.</u> The judgment in Hamlet's criminal case involved "the suspension of sentence" to a term of imprisonment on condition that he be placed on supervised probation, <u>Anderson v. Commonwealth</u>, 490 S.E.2d 274, 277 (Va. Ct. App. 1997) (citing Va. Code § 19.2-303), not "the imposition of probation," <u>id.</u> (citing Va. Code § 19.2-304). <u>See</u> Compl. Ex. A,

at 2–3.

Third, "[t]he only statutory limitation on the court's exercise of its discretion" to determine the conditions of suspension "is one of reasonableness." <u>Murry v. Commonwealth</u>, 762 S.E.2d 573, 576 (Va. 2014) (citing Va. Code § 19-2.303) (internal quotation marks omitted); <u>accord</u> <u>Dyke v. Commonwealth</u>, 69 S.E.2d 483, 486 (Va. 1952) ("Inherent in that optional authority [to suspend a sentence] is the power of the court to attach such reasonable terms and conditions to the suspension as it may deem proper."). "Probation is an option available to the sentencing court as one of multiple 'reasonable terms and conditions' the court has 'the authority to fix . . . for the suspension of execution of a sentence" under § 19.2-303. <u>McFarland v. Commonwealth</u>, 574 S.E.2d 311, 313 (Va. Ct. App. 2002) (quoting <u>Hartless v. Commonwealth</u>, 510 S.E.2d 738, 739 (Va. Ct. App. 1999)).

Fourth, Virginia law does not require a trial court to memorialize each rule of probation with which a defendant must comply. <u>See</u> <u>Fazili v. Commonwealth</u>, 835 S.E.2d 87, 95 (Va. Ct. App. 2019) (citing <u>Miller v. Commonwealth</u>, 492 S.E.2d 482, 491 (Va. 1997) (explaining that probation officers are "statutorily required to supervise, assist, and provide a probationer with a statement of the conditions of his release from confinement," and are therefore "charged by law with defining a probationer's permissible or impermissible conduct"))). Rather, "unless a statute specifically imposes on the [trial] court the duty to set the parameters of the condition at issue, the [trial] court may set the bounds of the condition and delegate to the probation office the duty to set the parameters of those conditions." <u>Fazili</u>, 835 S.E.2d at 95 (explaining that "while the circuit court sets the terms and conditions of probation" when it places the defendant on probation as a condition of suspending a sentence under § 19.2-303, the

"probation officers enforce those terms and conditions and exercise discretion in doing so" while the defendant is under their court ordered supervision). If the defendant believes that a condition or rule imposed by the probation office is "unreasonable" or unlawful, then he may timely raise his concerns in state court. See, e.g., Commonwealth v. Rhodes, No. FE-2014-393, 2018 WL 9393016, at *2, *8 (Va. Cir. Ct. Sept. 27, 2018) (concluding, in case where the trial court suspended part of defendant's sentence on condition that he "comply with all the rules and requirements set by the Probation Officer," that it was not unreasonable for the officer to require defendant "to be 'truthful, cooperative, and report as instructed'"); Douglas v. Commonwealth, No. 1886-15-3, 2017 WL 1149686, at *4 (Va. Ct. App. Mar. 28, 2017) ("While Douglas could have objected to the condition [prohibiting him from accessing sexually explicit materials while on supervised probation] after it was explained to him [by his probation officer], he failed to do so and agreed to comply with the condition as a term of his probation. Rather than objecting to the condition at issue, Douglas chose to accept the benefit of the court's suspension of sentence." (internal quotation marks omitted)).

Finally, if the defendant violates a suspended sentence condition—including any reasonable condition of probation imposed by the probation officer—then "the court shall revoke the suspension and the original sentence shall be in full force and effect." Va. Code § 19.2-306(C) (eff. July 1, 2002); see Hartless, 510 S.E.2d at 739 ("A court's ability to revoke the suspension of a sentence and to impose that sentence permits it to enforce a probationary requirement as a condition of suspension."); see, e.g., Carroll v. Commonwealth, 682 S.E.2d 92, 93–94 (Va. Ct. App. 2009) (defendant's violation of discretionary condition set by probation office, rather than by the court's sentencing order, provided legitimate basis for

revoking suspended sentence). Put differently, in a case where the trial court suspends a defendant's sentence on condition that he comply with the probation officer's "rules and requirements," the court in effect adopts those rules and requirements as its own conditions of suspension. See, e.g., Rhodes, 2018 WL 9393016, at *2, *5, *8–9; Douglas, 2017 WL 1149686, at *2, *4; Carroll, 682 S.E.2d at 93–95. If the court finds after a hearing that the defendant violated a reasonable condition, the suspended sentence is revoked, and the defendant may be required to serve the rest of his sentence in prison. See Va. Code § 19.2-306(C) ("The court may again suspend all or any part of this sentence and may place the defendant upon terms and conditions or probation.").

3.    Application of Heck to Hamlet's Claims

Hamlet's conviction for malicious wounding carried a mandatory "term of imprisonment of not less than five years nor more than 20 years." Va. Code § 18.2-10(c). The judge sentenced Hamlet to a term of imprisonment for fifteen years. Compl. Ex. A, at 2. He then suspended ten years of that fifteen-year prison term upon the conditions (as relevant here) that Hamlet would be on supervised probation for five years following his initial release from prison and "shall comply with all the rules and requirements set by the Probation Officer." Compl. Ex. A, at 2–3. The judge did not specify GPS monitoring as a condition of suspending Hamlet's sentence, but he was not required to do so under Virginia law. See Va. Code § 19.2-303. Rather, he defined the outer bounds of the relevant conditions—that for a finite period must Hamlet comply with the rules and requirements set by his probation officer—and delegated to the local probation office "the duty to set the parameters of those conditions," Fazili, 835 S.E.2d at 85. See Compl. Ex. A, at 2–3. The Defendant Probation

Officers in turn required Hamlet to wear a GPS bracelet while under court-ordered supervision. See Compl. 12, 14–15, 17. "Thus, under Virginia law, the conditions of probation [Hamlet] challenges are part of the sentence imposed by the Circuit Court, and habeas relief is the exclusive remedy available for those challenges." Saunders, 2014 WL 2155342, at *3 (concluding the same with respect to conditions that plaintiff not consume alcohol, have contact with children, or access the internet while on supervised probation as a condition of suspended sentence under § 19.2-303); see also Firewalker-Fields, 2020 WL 2946071, at *2 ("Because any relief granted on Firewalker-Fields's claim would necessarily demonstrate the invalidity of at least a portion of the criminal judgment against him—the challenged terms of probation [restricting his internet access and attendance at religious services]—he may not bring that claim in an action pursuant to 42 U.S.C. § 1983, but must file a habeas petition instead."). Hamlet's claims are therefore subject to dismissal pursuant to the bar imposed by Heck.

**B.      Hamlet's Allegations Fail to State a Constitutional Violation.**

Even if judgment in Hamlet's favor on some of his § 1983 claims would "not necessarily imply the invalidity" of his state court sentence, Covey, 777 F.3d at 197, the facts alleged in Hamlet's complaint, accepted as true and viewed in his favor, fail to state a claim for relief against the Defendant Probation Officers, see Thigpen, 273 F. App'x at 272–73. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The facts necessary to state a claim under § 1983 "will vary with the constitutional provision

at issue," Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), and the capacity in which the government-official defendant is sued, Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Hamlet alleges that Defendants, sued in their individual capacities, violated his First Amendment right to travel, see Compl. 8, 19; his Fourth Amendment right against unreasonable searches and seizures, see id. at 3–5, 18–23; his Fifth Amendment right against "double sentencing," id. at 20, or "enhance[d] or extend[ed]" conditions of probation, id. at 21; the Eighth Amendment's protection against cruel and unusual punishments, id. at 8, 19–23; and his Fourteenth Amendment right not to be deprived of a protected "liberty interest [without] notice and a hearing on the matter," id. at 3; see also id. at 4–6, 17–19. He also asserts that all three Defendants conspired to violate his constitutional rights and that Duncan and Cassell violated the unconstitutional conditions doctrine by threatening to send Hamlet back to jail if he did not sign the waiver and notification forms. Hamlet's essential grievance, however, is not that Defendants required him to wear a GPS monitor as a condition of his supervised probation. It is that Defendants did so without seeking a court order specifically imposing the condition, a procedure Hamlet believes is required "under Virginia statute." Compl. 6; see generally id. at 3, 5–6, 9, 13, 16–18, 20. Accordingly, the court addresses Hamlet's procedural due process claim first.

The Fourteenth Amendment's Due Process Clause "provides that no state shall 'deprive any person of life, liberty, or property without due process of law.'" Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015) (quoting U.S. Const. amend. XIV). "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Id. "A liberty interest

may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005) (cleaned up). Hamlet does not argue that the Constitution itself prohibits state officials from requiring him to wear a GPS monitor as a consequence of his valid criminal conviction. <u>Cf.</u> <u>Griffin v. Wisconsin</u>, 483 U.S. 868, 874 (1985) ("To a greater or lesser degree, it is always true of probationers . . . that they do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special probation restrictions." (cleaned up)); <u>Meachum v. Fano</u>, 427 U.S. 215, 224 ("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."); <u>Hashim v. Nelson-Clash</u>, No. 12cv1892, 2013 WL 80155, at *7 (D. Md. Jan. 4, 2013) ("Although Plaintiff has a liberty interest in remaining on probation, he is not entitled to a particular level of probation or particular conditions."). Rather, Hamlet alleges that an unidentified "Virginia statute" gives state trial courts exclusive authority to impose GPS monitoring as a "special condition" of probation, Compl. 6, and requires notice and a hearing before the court may do so. <u>See generally</u> <u>id.</u> at 3, 5–6, 9, 13, 16–18, 20.

A state official's alleged "violations of state law cannot provide the basis for a due process claim" under § 1983. <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 392 (4th Cir. 1990) ("If Weller is seeking compliance with state law, this is not the proper forum."). "[D]epending on how it is drafted," however "a state statute may . . . trigger federal liberty interests and attendant procedural due process protections for those affected by the law." <u>Henderson v.</u>

City of Roanoke, 504 F. Supp. 3d 530, 536 (W.D. Va. 2020) (citing Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 467 (1981)). "But the extension of federal due process to state law is circumscribed and is only derived, if at all, from the text of the statute, rule, or policy at issue." Id. A state law creates a protected liberty interest only when its text "establish[es] . . . substantive predicates to govern official decisionmaking and limit discretion, coupled with language that explicitly mandates the outcome to be reached upon a finding that the relevant criteria have been met." Berrier v. Allen, 951 F.2d 622, 625 (4th Cir. 1991) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459–63 (1989)). Hamlet's failure to identify the "Virginia statute" at issue, Compl. 6, leaves the court unable to conduct this threshold analysis. As far as the court can tell, however, Hamlet's essential concern is that the Defendant probation officers failed to obtain a court order expressly authorizing GPS monitoring in his case. Even if such a statute does exist, "[t]he mere fact that [Virginia] has created [a] procedural regime for imposing [GPS monitoring] on its [probationers] does not in itself indicate the existence of an underlying" liberty interest protected by the Fourteenth Amendment. Id. at 624; see also Stewart v. Bailey, 7 F.3d 384, 392–93 (4th Cir. 1993) ("When a state does not comply with a procedure specified in one of its own statutes or rules, it has violated that statute or rule, and nothing more."). Accordingly, Hamlet's allegations fail to state a due process claim under § 1983. See Hashim, 2013 WL 80155, at *7.

Hamlet's complaint also fails to state any violation of his constitutional right to travel freely, see Compl. 8, 19; his Fourth Amendment right against unreasonable searches and seizures, see id. at 3–5, 18–23; his Fifth Amendment right against "double sentencing," id. at 20, or "enhance[d] or extend[ed]" conditions of probation, id. at 21; the Eighth Amendment's

protection against cruel and unusual punishments, id. at 8, 19–23, or the "unconstitutional conditions" doctrine, id. at 8. See, e.g., Sipes v. Sampson, No. 2:08cv213, 2009 WL 2488085, at *4–5 (W.D. Mich. Aug. 13, 2009) ("[A]ssuming that the Eighth Amendment even applies to parolees," a requirement that parolee wear GPS ankle bracelet, without more, does not constitute cruel and unusual punishment); Hashim, 2013 WL 80155, at *8 ("[F]ollowing his conviction and during his sentence and status as a . . . probationer, Plaintiff did not have the right to unfettered travel or to control where he lived."); cf. Rhodes, 2018 WL 9393016, at *5 (explaining that probation granted under § 19.2-303 "is not a 'governmental benefit' but, rather, an 'act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement'" (quoting Pierce v. Commonwealth, 633 S.E.2d 755, 758 (Va. Ct. App. 2006)). This pleading defect necessarily defeats Hamlet's claims that Defendants conspired to violate his substantive constitutional rights. See Shooting Point, LLC v. Cumming, 243 F. Supp. 2d 536, 537–38 (E.D. Va. 2003) (explaining that a § 1983 complaint must show a plausible "deprivation of a constitutional right as a result of the alleged conspiracy" to state separate conspiracy claim under § 1983).

Under Virginia Code § 19.2-303, "[t]he essence of [probation] is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence," Morrissey v. Brewer, 408 U.S. 471, 477 (1972). See generally Cilwa v. Commonwealth, 836 S.E.2d 378, 382–83 (Va. 2019); Anderson, 490 S.E.2d at 277. "The only statutory limitation on the court's exercise of its discretion is one of reasonableness." Murry, 762 S.E.2d at 576 (citing § 19-2.303); cf. United States v. Knights, 534 U.S. 112, 119 (2001) ("Just as other punishments for criminal convictions curtail an offender's

freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."). Imposing reasonable conditions does not violate the Fifth Amendment's "proscription against successive punishments for the same offense," United States v. Woodrup, 86 F.3d 359, 360 (4th Cir. 1996), because those conditions are part "of the original sentence for which the probation . . . was authorized," id. at 362. See Dyke, 69 S.E.2d at 486; Va. Code § 19.2-303. Similarly, because a grant of probation under § 19.2-303 is not "a governmental benefit," but a "criminal sanction" imposed upon a valid conviction, Rhodes, 2018 WL 9393016, at *5, state officials do not violate the unconstitutional conditions doctrine by requiring a defendant, under threat of reincarceration, to comply with such reasonable constraints on his freedoms. Cf. Democracy N.C. v. N.C. State Bd. of Elections, 476 F. Supp. 3d 158, 219 (M.D.N.C. 2020) ("Under the unconstitutional conditions doctrine, 'the government may not deny a benefit to a person because he exercises a constitutional right.'" (quoting Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 604 (2013)); Burnham, 833 S.E.2d at 115 ("There would be no point to suspending a portion of a sentence if that suspension carried no consequences.").

The Supreme Court has held that a State conducts a Fourth Amendment "search when it attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements" after he is released from prison. Grady v. North Carolina, 575 U.S. 306, 309 (2015) (per curiam) ("Where, as here, the Government obtains information by physically intruding on a constitutionally protected area, such a search has undoubtedly occurred.")). "That conclusion, however, does not decide the ultimate question of the [condition's] constitutionality. The Fourth Amendment prohibits only unreasonable searches.

The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search," id. at 310, and the extent to which it intrudes on an objectively reasonable expectation of privacy, United States v. Bullard, 645 F.3d 237, 242–43 (4th Cir. 2011) (citing Bond v. United States, 529 U.S. 334, 338 (2000)).

Individuals severing terms of supervised release after a criminal conviction "have severely diminished expectations of privacy by virtue of their status alone." Samson v. California, 547 U.S. 843, 852 (2006). Hamlet alleges that he signed a "GPS Monitoring Condition" form while he and Duncan were going over the conditions of his supervised probation. Compl. 15. Virginia law specifically authorizes the use of GPS monitoring for individuals who are on probation as a condition of suspended sentence under § 19.2-303. Although Hamlet insists that he signed the notification form under protest, Compl. 21, he nonetheless pled facts showing that he was "unambiguously aware," Samson, 547 U.S. at 853 (quotation marks omitted), of the GPS monitoring condition before Duncan and Cassell attached the device to his ankle. Accordingly, his complaint fails to state a Fourth Amendment violation. See, e.g., Lee v. Los Angeles Cnty. Probation Dep't, No. CV 17-19, 2018 WL 7506175, at *4 (C.D. Cal. July 26, 2018) (plaintiff who "signed a similar order notifying him of the conditions of his release, including the installation and monitoring of a DPS device," but wrote "'Do not agree' next to that provision," failed to state a Fourth Amendment violation where state law "specifically authorize[d] the use of continuous electronic monitoring" for certain probationers) (citing Samson, 547 U.S. at 849, 852). For all of these reasons, Hamlet's claims fail to state a claim and are subject to dismissal on that ground, too.

III.    CONCLUSION

For the foregoing reasons, the action is hereby dismissed without prejudice under 28

U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and Defendants' motion for summary judgment, ECF

No. 23, is denied as moot.

It is so **ORDERED**.

Entered:  September 13, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.09.13 11:32:32
-04'00'

Michael F. Urbanski
Chief United States District Judge